UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 99-60877
_____

J.L. HOLLIS,

Plaintiff-Appellant-Cross-Appellee,

v.

PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY,

Defendant-Appellee-Cross-Appellant,

and

PAUL REVERE INSURANCE GROUP

Defendant-Appellee.

_____

Appeals from the United States District Court
for the Southern District of Mississippi
_____

August 8, 2001

Before REYNALDO G. GARZA, DAVIS and JONES, Circuit Judges.

REYNALDO G. GARZA, Circuit Judge:

This case involves claims for denial of benefits under two disability insurance policies. Appellant-cross-appellee Larry Hollis ("Hollis") began work with R.M. Hendrick Graduate Supply House, Inc. ("Graduate Supply") as a salesman in 1970. Graduate Supply sells class rings, diplomas, regalia, graduation

-1-

invitations, yearbooks, and other similar items to high schools and colleges.

As a Graduate Supply sales representative, Hollis was assigned a territory and was responsible for servicing the schools within that territory. Hollis would load his car with Graduate Supply products, deliver them to the schools, make a sales presentation to the students, and then reload his car. In addition, Hollis serviced some of Graduate Supply's commercial accounts.

Prior to August 1, 1981, Graduate Supply treated Hollis as an employee, but, on August 1, 1981, Hollis and Graduate Supply signed an agreement that made Hollis an independent contractor. Under the agreement, Hollis was required to pay his own travel expenses, provide his own vehicle, and pay his own employment and income taxes. Hollis determined when he would visit his assigned schools, and he was solely responsible for maintaining Graduate Supply's contracts with those schools. In return, Graduate Supply paid Hollis a commission on the items he sold. However, Graduate Supply was Hollis's primary source of income, he had the same duties as employee-sales representatives, and he shared in year-end bonuses like Graduate Supply's employees.

Additionally, Graduate Supply had a program to provide life, medical, and disability insurance for its employees in which Hollis participated. Pursuant to this program, Hollis procured a

disability insurance policy from Provident Life and Accident Insurance Company ("Provident"). Graduate Supply's employee-sales representatives obtained disability policies from a company called Lincoln Life. On his own, Hollis obtained a second disability policy from Paul Revere Insurance Company ("Paul Revere").

Graduate Supply paid $600.00 per year, or $50.00 per month, of the premium of each salesman's policy procured pursuant to its benefit program. If a salesman purchased a policy that cost more than $600.00 per year, Graduate Supply would pay the excess as it became due and then deduct it from the salesperson's monthly compensation. The premiums on Hollis's Provident policy were paid in this fashion.

The Provident policy would pay a monthly benefit of $4,100.00 in case of disability at a cost of $2,020.00 per year. The Paul Revere policy would pay a monthly benefit of $2,100.00 in case of disability. Both policies provide benefits in case of "total disability," but each policy defines that term in a slightly different way. Under the Provident policy, "total disability" means that "due to injury or sickness" the insured is "not able to perform the *substantial and material* duties of [his] occupation." Under the Paul Revere policy, "total disability" means that "because of injury or sickness," the insured is "unable to perform the *important* duties of [his] occupation."

-3-

Beginning in 1980, Hollis experienced occasional lower back pain and muscle spasms. Between 1980 and 1995, Hollis visited physicians several times for diagnosis and treatment of his back pain. The physicians told him that he did not have a ruptured disk or any other surgical problems. They advised Hollis to stay off his feet for a few days and take pain medication. In May of 1995, Hollis experienced severe back pain and spasms while unloading boxes of merchandise from his vehicle. He again visited a physician, Dr. Lynn Stringer, who performed an MRI on him and diagnosed him with advanced degenerative disc disease. His physician told him that excessive driving, bending, lifting and stooping was the reason for his back pain. Hollis attempted to continue working, but on August 17, 1995 he resigned from Graduate Supply due to his back problems.

On August 23, 1995, Hollis submitted his claim forms to Provident and Paul Revere. Dr. Stringer completed the Attending Physician Statement portion of the form. She reported the diagnosis as advanced degenerative disc disease and explained that the condition was permanent. She advised Hollis to either change his work habits or stop working. Within six months of the filing of the claim, both Provident and Paul Revere began paying benefits to Hollis.

In early 1997, Provident acquired Paul Revere and transferred Hollis's file to a different claim representative,

Sally Moore.  Moore contacted Hollis and told him that the typed attending physician's statements he had been submitting must be handwritten.  In a telephone conversation, Hollis informed her, "very aggressively" according to Provident and Paul Revere, that he would continue to submit typed forms to save his physician time.  Approximately one and half hours after this telephone conversation, Moore reopened the investigation into Hollis's claim and ordered additional physician statements and surveillance of Hollis's daily activities.  Both Provident and Paul Revere terminated his benefits in early 1998 on the ground that he did not have a "total disability" as that term is defined under the policies.

In April of 1998, Hollis filed suit against Provident and Paul Revere in Mississippi state court for breach of contract and bad faith denial of disability insurance benefits.  The case was removed to federal district court on May 5, 1998.  In the federal district court, Provident moved for summary judgment on Hollis's state law claims on the ground that they were preempted by the federal Employee Retirement Income Security Act ("ERISA").  The district court denied its motion.  The case was tried to a jury on May 28, 1998.  As to Provident, the jury found that Hollis was totally disabled as defined by the Provident policy and that Provident acted in bad faith in denying Hollis's claim.  As to Paul Revere, the jury found that Hollis was not totally disabled under its policy.

In addition to policy benefits, the jury awarded $100,000 in damages for mental anguish and emotional distress to Hollis for Provident's bad faith denial of disability benefits. Hollis moved the district court to award attorney's fees and costs, but the district court denied the award.

On appeal, Hollis raises two points of error. First, he claims that the district court erred by failing to award attorney's fees and costs. Second, he claims that the jury's answer that he was not totally disabled under the Paul Revere policy must be set aside because: it cannot be reconciled with the jury's answer that he was totally disabled under the Provident policy, the jury arrived at this answer by impermissibly considering evidence regarding Hollis's preexisting condition, and it is against the great weight of the evidence. Provident raises three points of error by way of cross appeal. First, Provident contends that Hollis's state law claims are preempted by ERISA. Alternatively, Provident argues: 1) there was insufficient evidence to support an award of damages for emotional distress and 2) Hollis's expert witness was not qualified to testify as to whether Provident denied his benefits in bad faith.

## I.

The first issue we must decide is whether ERISA preempts Hollis's state law claims against Provident. Provident moved for summary judgment on the ground that ERISA preempts Hollis's state

law claims, but the district court denied the motion.  We reverse the decision of the district court.

ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . ."  29 U.S.C. § 1144(a) (1994).  More specifically, Section 1144(a) bars state law causes of action when two elements are present: 1) the state law claims address areas of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan; and 2) the claims directly affect the relationship between the traditional ERISA entities–the employer, the plan and its fiduciaries, and the participants and beneficiaries.  *See Weaver v. Employers Underwriters, Inc.*, 13 F.3d 172, 176 (5th Cir. 1994);  *Memorial Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236, 245 (5th Cir. 1990).  Hollis's state law claims concern the right to receive benefits under an ERISA plan, and his claims directly affect the relationship between traditional ERISA entities.  Therefore, ERISA preempts his state law claims against Provident.

A.  ERISA Plan

The first element of preemption–whether the state law claims address areas of exclusive federal concern, *such as the right to receive benefits under an ERISA plan*–is met.  Clearly, Hollis claims a right to receive benefits under the disability insurance policy Provident issued.  However, this fact alone is

insufficient to meet the first element of preemption.  He must claim a right to receive benefits under an *ERISA* plan for preemption to occur.  *See Weaver*, 13 F.3d at 176.  Hollis concedes that Graduate Supply established and maintained an ERISA plan[1].  The issue, therefore, is whether Hollis's disability insurance policy with Provident constitutes part of Graduate Supply's ERISA plan.

As mentioned above, under the terms of the Graduate Supply plan, a salesman would choose a disability insurance policy, and Graduate Supply would pay $600 per year in premiums on that policy.  Hollis chose a disability policy from Provident, and Graduate Supply paid $600 per year in premiums on that policy.  Holis argues that his Provident Policy was not part of Graduate Supply's ERISA plan because he selected Provident as his insurance company, while all the other salesmen selected Lincoln Life.  The terms of the Graduate supply plan, however, provided that Graduate Supply would pay $600 regardless of which insurance company was selected.  With respect to disability insurance, Graduate Supply treated Hollis the same as it treated any other

---

[1]Hollis states in his brief that "[t]he 'plan' did exist as to the employees of Graduate Supply, and Hollis could only have been a plan participant if he had been designated a beneficiary by one of the employees of the plan or by a provision of the plan itself."  At oral argument, Hollis's attorney was asked, "[do] you agree it's an ERISA plan?"  He responded by stating "I don't disagree with the district court's finding of fact to that effect."

salesman.  Thus, Hollis's Provident policy was part of Graduate Supply's ERISA plan.

B.  "Participant" or "Beneficiary"

Although the existence of an ERISA plan is a necessary requirement for preemption, its existence does not necessitate preemption.  *See Weaver*, 13 F.3d at 176.  For preemption to occur, the claims must "directly affect the relationship between traditional ERISA entities-the employer, the plan and its fiduciaries, and the participants and beneficiaries."  *See* 29 C.F.R. § 2510.3-3(b) (2001); *Memorial Hosp. Sys.*, 904 F.2d at 245.  Because Hollis's claims directly affect the relationship between traditional ERISA entities, the second element of preemption is met.

Claims of breach of duty of good faith, breach of contract, and denial of benefits, like Hollis's claim against Provident, certainly can be preempted by ERISA.  *See Weaver*, 13 F.3d at 177.  However, the rule that the claims must "directly affect the relationship between traditional ERISA entities" has a standing component as well.  *See id.*  Claims, such as those referenced above, are preempted only when the claimant is a plan "participant" or "beneficiary."  *See id.*  Thus, for preemption to occur, Hollis must be either a participant or beneficiary as ERISA defines those terms.  Provident does not assert that Hollis is a participant.

Thus, ERISA preempts his claims only if he is a beneficiary. ERISA defines beneficiary as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8). Clearly, Hollis is a person who, by the terms of the Provident policy, a part of Graduate Supply's ERISA plan, "is or may become entitled to a benefit thereunder." *Id.* He was the beneficiary of the disability insurance policy, he was entitled to receive benefits under that policy in the event of total disability, and he did, in fact, receive benefits from Provident for several months. Therefore, under the definition's plain language, Hollis is a beneficiary.

In spite of the definition, Hollis gives two separate and independent reasons why he is not a beneficiary. First, he argues that independent contractors, such as himself, cannot be ERISA beneficiaries. Second, he argues that the definition of beneficiary does not include a person whose services resulted in the accrual of the benefit. We are not persuaded by either argument.

Relying on our decision in *Weaver*, the district court concluded that an independent contractor can not be an ERISA beneficiary. In that case, Weaver, an independent contractor, sued his employer and the insurance carrier obligated to pay benefits under the ERISA benefit plan. *See Weaver*, 13 F.3d at

-10-

173-74.  We decided that ERISA did not preempt state law in that case because Weaver was neither a participant nor a beneficiary.  *See id.* at 176.  We said that Weaver was not a participant precisely because he was an independent contractor.  After all, ERISA defines a participant as "any *employee* . . . who is or may become entitled to a benefit."  29 U.S.C. § 1002(8).  However, we gave an entirely different reason why Weaver was not a beneficiary.  *See id.* at 177.  Weaver was not a beneficiary because the benefit plan did not designate him as a beneficiary.  *See id.*  In other words, Weaver was not a person who could ever become entitled to benefits; thus, he did not meet the definition of beneficiary.

For this particular issue, what we did not say in *Weaver* is more important than what we said.  We did not say that his status as an independent contractor had anything to do with him not being a beneficiary.  In fact, implicit in our holding in *Weaver* is that an independent contractor can be a beneficiary so long as he is a person "who is or may become entitled to a benefit" under the plan.  Therefore, Hollis's independent contractor status does not preclude him from being a beneficiary.

Similarly, Weaver's claim that his own services accrued a benefit had nothing to do with our holding that he was not a beneficiary.  However, citing a footnote from an opinion of the Fourth Circuit, Hollis argues that a beneficiary under ERISA

includes only "a person *other than one whose service resulted in the accrual of the benefits*, but who is designated as the recipient of benefits accrued through the service of another." *Darden v. Nationwide Mutual Ins. Co.*, 796 F.2d 701, 704 n.3 (4th Cir. 1986)(emphasis added). In other words, Hollis argues that a beneficiary is limited to people such as the worker's spouse and children. Until now, we have not squarely decided this issue. However, the other courts of appeals faced with this issue have decided that beneficiary includes those persons whose services accrued the benefit. We agree with our sister courts.

In *Peterson v. American Life and Health Ins. Co.*, the Ninth Circuit, relying on the plain language of ERISA's definition of beneficiary, held that an ERISA beneficiary includes "any person designated to receive benefits from a policy that is part of an ERISA plan." 48 F.3d 404, 409 (9th Cir. 1995). The *Peterson* court reasoned that "to hold otherwise would create the anomaly of requiring some insureds to pursue benefit claims under state law while requiring others covered by the identical policy to proceed under ERISA." *Id.* The *Peterson* court noted that "such a scenario would frustrate Congress's intent of achieving uniformity in the law governing employment benefits." *Id.*

Other circuits have found the Ninth Circuit's reasoning as persuasive as we do. In *Prudential Ins. Co. of America v. Doe*, the Eighth Circuit held that the controlling shareholder in a law

firm was an ERISA beneficiary because he was "designated to receive benefits under the terms of the "employee benefit policy."  76 F.3d 206, 208 (8th Cir. 1996).  In *Wolk v. Unum Life Ins. of America*, the Third Circuit held that a partner in a law firm was an ERISA beneficiary because she was designated to receive benefits under an employee welfare benefit plan.  186 F.3d 352, 356 (3d Cir. 1999).  Finally, in *Engelhardt v. Paul Revere Life Ins. Co.*, the Eleventh Circuit held that a physician-shareholder of a professional corporation was an ERISA beneficiary because he was a beneficiary under the group disability insurance plan.  186 F.3d 352, 356 (11th Cir. 1999).

At the end of this analysis, we reach the unremarkable conclusion that ERISA's definition of beneficiary means precisely what it says.  A beneficiary is "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder."  29 U.S.C. § 1002(8).  Because Hollis was a person designated by the terms of the plan who could become entitled to benefits thereunder, he is an ERISA beneficiary.

Both elements of preemption are satisfied in this case. Hollis's state law claims address areas of exclusive federal concern because he is claiming a right to receive benefits under the terms of an ERISA plan.  Because Hollis is an ERISA beneficiary, his claims directly affect the relationship between

-13-

traditional ERISA entities.  Therefore, ERISA preempts Hollis's

state law claims against Provident for bad-faith denial of

disability benefits.

The judgment against Provident is vacated and the case is

remanded to the district court so Hollis's claims against

Provident can be concluded as appropriate under ERISA.  We leave

it to the district court to determine whether Hollis has

exhausted his administrative claims against Provident.  If not,

the district court should remand Hollis's claims against

Provident to the plan administrator.  If the claims have been

administratively exhausted, then the district court should

consider whether to allow Hollis to amend his suit to seek review

of the administrative findings under the appropriate standard of

review.[2]

II.

In addition to preemption, Provident raises two more issues

by way of cross appeal.  Provident argues that there was

insufficient evidence to support the award of emotional distress

and mental anguish damages and that Hollis's expert was

unqualified to testify as to whether Provident denied benefits in

---

[2]"This court requires that claimants seeking benefits from an ERISA plan must first exhaust available administrative remedies under the plan before brining suit to recover benefits." *Bourgeois v. Pension Plan for Employees of Santa Fe Int'l Corps.*, 215 F.3d 475, 479 (5th Cir. 2000) (citing *Denton v. First Nat'l Bank of Waco*, 765 F.2d 1295, 1300 (5th Cir. 1985)).

bad faith.  Since we hold that ERISA preempts Hollis's state law claims against Provident, both of these issues are moot.

III.

Hollis challenges the judgment rendered on the take nothing verdict in favor of Paul Revere.  He argues first that the verdict in favor of Paul Revere can not be reconciled with the verdict against Provident.  As indicated above, the district court erred in allowing Hollis's claims against Provident to go to the jury, so the jury's verdict on those claims is essentially a nullity.  Thus, we are only left with the take nothing verdict in favor of Paul Revere.

Hollis also argues that the jury improperly considered evidence that he had a preexisting condition at the time he applied for the Paul Revere policy.  During deliberations, the jury sent a note to Judge Barbour which asked: "Are we allowed to consider good-faith/bad-faith in determining our decision in regards to the written application for a policy."  According to Hollis, the note shows that the jury found in favor of Paul Revere because it believed he applied for the policy in bad faith.

Judge Barbour sent a note back to the jury room instructing them that they should not consider evidence of bad faith/good faith in the application process to determine whether Hollis was totally disabled.  Juries are presumed to follow the instructions of the court. *See Richardson v. Marsh*, 481 U.S. 200, 206, 107

S.Ct. 1702, 95 L.Ed.2d 176 (1987). Therefore, we must presume that the jury followed Judge Barbour's instructions and ignored the evidence of bad faith in the application process.

Hollis next argues that we should grant a new trial in his action against Paul Revere because the verdict is against the great weight of the evidence. After reviewing the record, we are not persuaded that the verdict in favor of Paul Revere was against the great weight of the evidence.

Hollis claims the district court erred by failing to award him attorney's fees in his action against Provident. Because Hollis's state law claims against Provident are preempted by ERISA, the issue is moot.

## IV.

We VACATE the judgment rendered against Provident and REMAND Hollis's action against Provident so it can be handled as an ERISA action. We AFFIRM the take nothing judgment rendered in favor of Paul Revere.