Karen L. **ERLANDSON**, Plaintiff,

v.

**LIBERTY LIFE ASSURANCE COMPANY OF BOSTON,**
et al., Defendants.

No. Civ.A.3:04CV0636–G.

United States District Court,
N.D. Texas,
Dallas Division.

June 2, 2004.

---

Michael F. Pezzulli, Pezzulli Kinser, Dallas, TX, for Plaintiff.

Iwana M. Rademaekers, Jackson Lewis, Stephen L. Baskind, Kleiman Lawrence Baskind & Fitzgerald, Dallas, TX, for Defendants.

### MEMORANDUM ORDER

FISH, Chief Judge.

Before the court are the motions of the plaintiff Karen L. Erlandson ("Erlandson") (1) to remand this case to the state court from which it was previously removed, and (2) for attorney's fees. For the reasons set forth below, Erlandson's motion to remand is granted, but her motion for attorney's fees is denied.

### I. BACKGROUND

Erlandson was a consultant employed by McKesson Corporation ("McKesson"). *See* Defendants' Response to Plaintiff's Emergency Motion to Remand ("Response") at 1; *see also* Plaintiff's Emer-gency Motion to Remand, or, Alternatively, to Sever Preempted Claims and Remand Remaining Claims and Brief in Support ("Motion") at 1. While suffering from several medical conditions, Erlandson took a leave of absence from McKesson and applied for short-term disability under McKesson's disability benefits plan. *See* Plaintiff's Third Amended Original Petition ("Petition") ¶¶ 10–13, *attached to* Defendant Liberty's Notice of Removal ("Notice of Removal") as Exhibit (B)(34); Motion at 2; Response at 2; *see also* Group Disability Risk Management Agreement (the "Plan"), *attached to* Appendix to Plaintiff's Emergency Motion to Remand, or, Alternatively, to Sever Preempted Claims and Remand Remaining Claims and Brief in Support ("Plaintiff's Appendix") as Exhibit (C)(3). The defendant Liberty Life Assurance Company of Boston ("Liberty") was the "claims administrator" under the Plan. Response at 2; Motion at 2.

Liberty—allegedly in the course of administering Erlandson's claim for disability benefits—hired co-defendants MJM Investigations, Inc. ("MJM"), and Richard B. Cowan ("Cowan"), an employee of MJM, to conduct a non-medical assessment (*i.e.*, surveillance) of Erlandson's claim. *See* Response at 2. On July 9, 2002, Erlandson attended a scheduled doctor's visit; Cowan followed her to that visit, allegedly pretending to be a patient. *See* Petition ¶ 21; Motion at 2. *Cf.* Response at 2. After Erlandson left the doctor's office, Cowan—who was now conspicuous to Erlandson—allegedly followed her in his car "in an aggressive and threatening manner." Motion at 2; *see also* Petition ¶ 21. Erlandson asserts that Cowan followed her to a restaurant where she sought refuge, and then from the restaurant to a neighborhood near her home. *Id.* According to Erlandson, who maintains that she was suffering from "chronic depression and ob-

sessive compulsive disorder," Motion at 1, Cowan's outrageous actions caused her to be "frightened and terrified," Petition ¶ 21, to think "she was the potential target of a violent crime," and to "fear[ ] for her life." Motion at 2.

On December 4, 2002, Erlandson filed suit against the defendant Liberty, MJM, and Cowan, in the 101st Judicial District Court of Dallas County, Texas, asserting claims for assault, invasion of privacy, and intentional infliction of emotional distress. *See* Plaintiff's Original Petition ¶¶ 21–24, *attached to* Notice of Removal as Exhibit (B)(2). The state trial court dismissed the latter two claims on summary judgment on March 12, 2004. *See* Order Regarding Defendants' Motion for Summary Judgment, *attached to* Plaintiff's Appendix as Exhibit A. Then, on March 19, 2004, Erlandson filed an amended petition adding claims for negligent infliction of emotional distress and breach of contract.[1] *See* Petition ¶¶ 30–49.

On March 26, 2004, Liberty timely removed this action pursuant to 28 U.S.C. § 1441, arguing that Erlandson's claims are completely preempted under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.* Notice of Removal at 2. On March 31, 2004, alleging improper removal, Erlandson filed the instant motion to remand the case back to state court and to collect attorney's fees for improper removal. *See* Docket Sheet; Motion at 1. After hearing oral arguments on April 13, 2004, this court granted Erlandson's motion as it related to defendants MJM and Cowan. The court, however, took under advisement Erlandson's motion to remand her claims against the defendant Liberty to determine whether those claims are completely preempted by ERISA.

## II. *ANALYSIS*

### A. *ERISA Preemption Generally*

 District courts have federal question jurisdiction over civil cases "arising under the Constitution, laws, or treaties of the United States." *See* 28 U.S.C. § 1331; *Frank v. Bear Stearns & Company*, 128 F.3d 919, 922 (5th Cir.1997). In determining whether a claim arises under federal law, the well-pleaded complaint rule allows a plaintiff to be the "master to decide what law he will rely upon" in pursuing his claims. *The Fair v. Kohler Die & Specialty Company*, 228 U.S. 22, 25, 33 S.Ct. 410, 57 L.Ed. 716 (1913); see also *Beneficial National Bank v. Anderson*, 539 U.S. 1, 6, 123 S.Ct. 2058, 156 L.Ed.2d 1 (2003); *Aaron v. National Union Fire Insurance Company of Pittsburg, Pa.*, 876 F.2d 1157, 1160–61 (5th Cir.1989), *cert. denied*, 493 U.S. 1074, 110 S.Ct. 1121, 107 L.Ed.2d 1028 (1990). Where potential remedies exist under both state and federal law, a plaintiff may choose to proceed only under state law and avoid federal court jurisdiction. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987); *Carpenter v. Wichita Falls Independent School District*, 44 F.3d 362, 366 (5th Cir.1995). "There is an exception to the well-pleaded complaint rule, though, if Congress 'so completely preempt[s] a particular area that any civil complaint raising this select group of claims is necessarily federal in character.'" *Arana v. Ochsner Health Plan*, 338 F.3d 433, 437 (5th Cir.2003) (en banc) (quoting *Metropolitan Life Insurance Company v. Taylor*, 481 U.S. 58, 63–64, 107 S.Ct. 1542, 95

---

1. Erlandson specifically alleges that she is a third-party beneficiary of a contract between McKesson and Liberty. *See* Petition ¶¶ 40–44. This contract, Annex B of the Disability Risk Management Agreement ("Annex B"), *attached to* Plaintiff's Appendix as Exhibit (C)(4), defines the parameters of Liberty's role as a claims administrator.

L.Ed.2d 55 (1987)), *cert. denied,* —— U.S. ——, 124 S.Ct. 1044, 157 L.Ed.2d 889 (2004).

■ The Supreme Court has held that state-law claims seeking relief within the scope of ERISA § 502(a)(1)(B)[2] must be recharacterized as arising under federal law, and, as such, are removable to federal court. *Metropolitan Life,* 481 U.S. at 60, 66–67, 107 S.Ct. 1542; see also *Ramirez v. Inter–Continental Hotels,* 890 F.2d 760, 762 (5th Cir.1989). When a claimant seeks relief "within the scope of [ERISA's] civil enforcement provisions," his or her claims are subject to *complete preemption. Metropolitan Life,* 481 U.S. at 66, 107 S.Ct. 1542. Complete preemption " 'recharacterizes' preempted state law claims as 'arising under' federal law for the purposes of . . . making removal available to the defendant." *McClelland v. Gronwaldt,* 155 F.3d 507, 516 (5th Cir.1998); see also *Johnson v. Baylor University,* 214 F.3d 630, 632 (5th Cir.), *cert. denied,* 531 U.S. 1012, 121 S.Ct. 567, 148 L.Ed.2d 486 (2000).

■ Another type of preemption, known as "conflict" or "ordinary" preemption, "arises when a federal law conflicts with state law, thus providing a federal defense to a state law claim, but does not completely preempt the field of state law so as to transform a state law claim into a federal claim." *Arana,* 338 F.3d at 439. Under ERISA's conflict preemption provision, § 514(a), "any and all State laws [are displaced or superceded] insofar as they . . . relate to any employee benefit plan." 29 U.S.C. § 1144(a); see also *Christopher v. Mobil Oil Corporation,* 950 F.2d 1209, 1217 (5th Cir.), *cert. denied,* 506 U.S. 820, 113 S.Ct. 68, 121 L.Ed.2d 35 (1992). Any state law "relates to" an ERISA plan "if it has a connection with or reference to" an employee benefit plan. *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 96–97, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983).[3] Significantly for this case, even if the court were to find that Erlandson's state law causes of action against Liberty relate to an ERISA plan within the meaning of § 514(a), conflict preemption is insufficient to create federal jurisdiction. See *McClelland,* 155 F.3d at 516–19 (finding that a claim that relates to an ERISA plan, but does not seek to enforce rights under § 502(a), does not create federal removal jurisdiction); *Copling v. Container Store, Inc.,* 174 F.3d 590, 594–95 (5th Cir.1999).[4] The court will, therefore, only examine the contours of Erlandson's state law claims insofar as they relate to complete preemption.

■ The Fifth Circuit, in *Memorial Hospital System v. Northbrook Life Insurance Company,* 904 F.2d 236, 245 (5th Cir.1990), outlined two unifying character-

---

**2.** § 502(a)(1)(B), ERISA's civil enforcement provision, provides:

> **§ 1132. Civil enforcement**
> **(a) Persons empowered to bring a civil action**
> A civil action may be brought—
> **(1)** by a participant or beneficiary—
> **(B)** to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan. . . .
> 29 U.S.C. § 1132(a)(1)(B).

**3.** While this "relate to" standard must be interpreted expansively to give the words their broad common-sense meaning, see *Egelhoff v. Egelhoff ex rel. Breiner,* 532 U.S. 141, 146–47, 121 S.Ct. 1322, 149 L.Ed.2d 264 (2001), "[s]ome state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Shaw,* 463 U.S. at 100 n. 21, 103 S.Ct. 2890.

**4.** Recently, the Fifth Circuit partially overruled *McClelland* and *Copling. Arana,* 338 F.3d at 440 n. 11. *Arana* did not, however, overrule the portions of *McClelland,* 155 F.3d at 516, and *Copling,* 174 F.3d at 595, holding that conflict preemption is insufficient to create removal jurisdiction.

istics of cases finding ERISA preemption of a plaintiff's state law causes of action. See also *Hollis v. Provident Life & Accident Insurance Company,* 259 F.3d 410, 414 (5th Cir.2001), *cert. denied,* 535 U.S. 986, 122 S.Ct. 1538, 152 L.Ed.2d 465 (2002); *Baylor University Medical Center v. Arkansas Blue Cross Blue Shield,* No. 3:03–CV–2084–G, 2004 WL 62582 at *3 (N.D.Tex. Jan. 9, 2004) (Fish, Chief J.). Preemption of a plaintiff's state law causes of action has been found when: (1) the state law claim addresses areas of exclusive federal concern, and (2) the claim directly affects the relationship among traditional ERISA entities—the employer, the plan and its fiduciaries, and the participants and beneficiaries. *Memorial Hospital,* 904 F.2d at 245; *Hollis,* 259 F.3d at 414; *Baylor,* 2004 WL 62582 at *3.

▮ Before analyzing the impact of ERISA's preemption clause on Erlandson's claims, the court hastens to note that "any doubts concerning removal must be resolved against removal and in favor of remanding the case back to state court." *Cross v. Bankers Multiple Line Insurance Company,* 810 F.Supp. 748, 750 (N.D.Tex. 1992); see also *Healy v. Ratta,* 292 U.S. 263, 270, 54 S.Ct. 700, 78 L.Ed. 1248 (1934) ("Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined."). The burden of establishing federal jurisdiction is on the party seeking removal. *Miller v. Diamond Shamrock Company,* 275 F.3d 414, 417 (5th Cir.2001) (citing *Frank,* 128 F.3d at 921–22).

### B. *An Area of Exclusive Federal Concern*

▮ The first element of preemption is whether the state law claim addresses areas of exclusively federal concern, including the right to receive benefits under the terms of an ERISA plan. *Memorial Hospital,* 904 F.2d at 245; see also *Hollis,* 259 F.3d at 414; *Baylor,* 2004 WL 62582 at *3. Congress' purpose in enacting ERISA was "to promote the interests of employees and their beneficiaries in employee benefit plans, ... and to protect contractually defined benefits." *Firestone Tire & Rubber Company v. Bruch,* 489 U.S. 101, 113, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989) (internal citations and quotations omitted). The Supreme Court has cautioned, however, that [it has] "addressed claims of [ERISA] preemption with the starting presumption that Congress [did] not intend to supplant state law." *New York State Conference of Blue Cross and Blue Shield Plans v. Travelers Insurance Company,* 514 U.S. 645, 654, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995); see also *Fort Halifax Packing Company, Inc. v. Coyne,* 482 U.S. 1, 19, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987) ("ERISA preemption analysis 'must be guided by respect for the separate spheres of governmental authority preserved in our federalist system.' ") (citation omitted). Thus, lawsuits against ERISA plans for commonplace, run-of-the-mill state-law claims—although obviously affecting and involving ERISA plans—are not preempted by ERISA. *Mackey v. Lanier Collection Agency & Service, Inc.,* 486 U.S. 825, 833, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988).

In the case *sub judice,* Liberty argues that Erlandson's state court petition clearly alleges claims arising under federal law. *See* Response at 7; Defendant Liberty's Amended Notice of Removal ("Amended Notice of Removal") at 2. In particular, Liberty argues that because Erlandson's causes of action for tort and breach of contract constitute claims for benefits under an employee welfare benefit plan that is subject to ERISA, Erlandson's state law claims are preempted by ERISA and, therefore, this court has federal question

jurisdiction. *See* Response at 4–9; Amended Notice of Removal at 2. The court disagrees.

### 1. *Erlandson's Tort Claims* [5]

■ Common law torts, including assault and negligent infliction of emotional distress, are hardly exclusive areas of federal concern.[6] Erlandson does not claim a right to receive benefits under the Plan. Instead, she is suing Liberty as a victim of its allegedly tortious conduct that was completely unauthorized by the Plan—*i.e.,* conduct that was not undertaken in the course of carrying out responsibilities under the Plan. See, *e.g., Darcangelo v. Verizon Communications, Inc.,* 292 F.3d 181, 186 (4th Cir.2002) (concluding that the plaintiff's complaint charged the plan administrator with conduct completely unrelated to its duties under the ERISA plan); *Duchesne–Baker v. Extendicare Health Services, Inc.,* No. Civ. A. 02–0590, 2003 WL 22327192 at *6 (E.D.La. Oct. 9, 2003) ("ERISA does not provide a cause of action to participants or beneficiaries for a plan administrator's tortious acts that are unrelated to his duties pursuant to its administration of the ERISA plan."). The crux of Erlandson's complaint is that Liberty hired MJM and Cowan "to threaten and intimidate her at her doctor's office and at her home while she was suffering chronic depression and obsessive compulsive disorder." Motion at 1. Such tortious actions committed during an investigation, if true, are entirely outside the scope of ERISA protection. If the court were to conclude otherwise, "a plan administrator could 'investigate' a claim in all manner of tortious ways with impunity." *Dishman v.*

*UNUM Life Insurance Company of America,* 269 F.3d 974, 984 (9th Cir.2001).

In an analogous case, the Ninth Circuit held that a state law tort claim for invasion of privacy arising from an investigation into a disability claim was not preempted by ERISA.[7] *Id.* The *Dishman* court noted that even when there is clearly *"some relationship* between the conduct alleged and the administration of the plan," that relationship may not be enough to warrant preemption. *Id.* (emphasis added). "[T]he objective of Congress in crafting Section 1144(a) was not to provide ERISA administrators with blanket immunity from garden variety torts which only peripherally impact daily plan administration." *Id.* Similarly here, Erlandson's claims arise from alleged torts committed during an investigation of her claim of disability. Although Erlandson's claims may bear some peripheral connection to the Plan, her tort claims exist independently of her rights as a plan participant. See *Hook v. Morrison Milling Co.,* 38 F.3d 776, 781–84 (5th Cir.1994) (employee's negligence claim against employer for an unsafe workplace not preempted by ERISA).

The court concludes that Texas common law—rather than an employee benefit plan—is the basis of Erlandson's state law tort claims. These claims are not, therefore, completely preempted under ERISA § 502.

### 2. *Erlandson's Breach of Contract Claims*

■ In addition to her tort claims, Erlandson is suing Liberty as a third-party

---

**5.** The court addresses Erlandson's first two claims—assault and negligent infliction of emotional distress—together because the same preemption analysis applies to both.

**6.** "Federalism concerns strongly counsel against imputing to Congress an intent to displace 'a whole panoply of state law in this

area' absent some clearly expressed direction." *Custer v. Sweeney,* 89 F.3d 1156, 1167 (4th Cir.1996) (citation omitted).

**7.** Dishman alleged that the investigators elicited information about him through a variety of underhanded means. See *Dishman,* 269 F.3d at 979–80.

beneficiary of a contract between McKesson and Liberty—"Annex B".[8] *See* Petition ¶¶ 40–44. For preemption to occur, Erlandson must be claiming a right to receive benefits under an ERISA plan. See *Hollis*, 259 F.3d at 414 (citing *Weaver v. Employers Underwriters, Inc.*, 13 F.3d 172, 176 (5th Cir.1994)). The issue is whether Annex B constitutes part of an ERISA plan: it does not.

Liberty does not assert that Annex B is part of the Plan, although it does generally argue that there is an ERISA plan at issue. Annex B is, in fact, an administrative services contract that Liberty itself considers to be a separate, confidential document. *See* Annex B at 144; Deposition of Heather A. Heins[9] at 99–100, *attached to* Plaintiff's Appendix as Exhibit C. This contract is not provided to plan participants, see *id.*, and cannot, therefore, be considered a part of an ERISA plan. See *Curtiss–Wright Corporation v. Schoonejongen*, 514 U.S. 73, 83, 115 S.Ct. 1223, 131 L.Ed.2d 94 (1995) (noting that one of ERISA's basic purposes was to afford employees the opportunity, *"on examining the plan documents,* [to] determine exactly what his rights and obligations are under the plan") (emphasis in original); *Fritcher v. Health Care Service Corporation*, 301 F.3d 811, 817 (7th Cir.2002) (finding that an administrative services agreement between an employer and the claims administrator of an ERISA plan was "not a 'plan document' for purposes of holding its terms against a plan participant or beneficiary"); *Local 56, United Food & Commercial Workers Union v. Campbell Soup Company*, 898 F.Supp. 1118, 1136 (D.N.J. 1995) ("A formal plan document is one which a plan participant could read to determine his or her rights or obligations

under the plan."). Erlandson's right, if any, to recover for breach of contract is governed by the contract between McKesson and Liberty.

It is clear that Erlandson's claim under Annex B is not a pretext for collecting plan benefits, nor does it require the interpretation of plan language. Accordingly, her claim does not implicate the restrictions and limitations of ERISA § 502 and is not completely preempted.

### C. A Traditional ERISA Entity

The second element of complete preemption is whether the claims directly affect the relationship among the traditional ERISA entities—the employer, the plan and its fiduciaries, and the participants and beneficiaries. *Memorial Hospital*, 904 F.2d at 245; see also *Hollis*, 259 F.3d at 414; *Baylor*, 2004 WL 62582 at *3. Liberty argues that Erlandson's claims are actually an attempt to enforce the fiduciary requirements of ERISA and of the Plan. *See* Amended Notice of Removal at 2; Response at 5–7, 10–11. The court again disagrees.

■ An administrator is not a plan fiduciary if the plan documents grant the plan sponsor the ultimate right to review and modify benefit determinations made by that administrator. See, *e.g., Reich v. Lancaster*, 55 F.3d 1034, 1049 (5th Cir. 1995) (holding that persons carrying out perfunctory or ministerial duties are not fiduciaries unless they "exercise discretionary authority and control that amounts to actual decision making power"); *Kyle Railways, Inc. v. Pacific Administration Services, Inc.*, 990 F.2d 513, 516 (9th Cir. 1993) (finding that the administrator of an ERISA plan was not a fiduciary where,

---

8. According to Erlandson, Liberty breached this contract by initiating an unwarranted investigation into her disability. *See* Petition ¶ 43.

9. Heather Heins is a corporate representative of Liberty. *See* Deposition of Heather A. Heins at 5.

according to the agreement between the employer and the administrator, the employer retained ultimate responsibility for all claims made under the plan); *Baker v. Big Star Division of the Grand Union Company,* 893 F.2d 288, 290 (11th Cir. 1989) ("[A] plan administrator who merely performs claims processing, investigatory, and record keeping duties is not a fiduciary") (internal quotation marks and citation omitted).[10]

In this case, Liberty asserts that it is merely a "claims administrator for the plan." *See* Response at 2. While Liberty performs some general administrative functions, McKesson is the named "Plan Administrator." See *id.* at 6; *see also* the Plan, *located in* Plaintiff's Appendix at 125. In fact, McKesson retains ultimate discretionary authority over the Plan and its operations, according to both the Plan[11] and Annex B.[12] Moreover, neither party argues that Liberty *de facto* performed discretionary functions with respect to the management of the Plan. Given Liberty's limited function in relation to the plan, the court concludes that Liberty is not an ERISA fiduciary. See, *e.g., Reich v. Lancaster,* 55 F.3d at 1049; *Kyle Railways,* 990 F.2d at 516; *Baker,* 893 F.2d at 290; *Saldana v. Aetna U.S. Healthcare,* 233 F.Supp.2d 812, 817–18 (S.D.Miss.2002)

(finding no evidence that the administrator of an ERISA plan "exercised any discretionary authority respecting the management of the plan and disposition of its assets"); *Haidle v. Chippenham Hospital, Inc.,* 855 F.Supp. 127, 132 (E.D.Va.1994) (finding that an administrator, whose function was limited to processing claims and disbursing benefit payments under the plan, could not be held liable under ERISA). Hence, Erlandson's claims do not implicate the relationship between traditional ERISA entities with respect to their performance of ERISA functions.

Although it is clearly not a traditional ERISA entity, Liberty—citing *Hubbard v. Blue Cross & Blue Shield Association,* 42 F.3d 942 (5th Cir.), *cert. denied,* 515 U.S. 1122, 115 S.Ct. 2276, 132 L.Ed.2d 280 (1995)—contends that it may remove the case anyway. Response at 11. *Hubbard* is distinguishable, however. In *Hubbard,* even though the plaintiff's state-law claim was not asserted against a traditional ERISA entity,[13] the Fifth Circuit found that the cause of action was preempted because it implicated an ERISA plan's administration of benefits. 42 F.3d at 946. In other words, the Fifth Circuit permitted the removal of the claims of a third-party, non-fiduciary because the plaintiff's claim was "intricately bound up with the inter-

---

**10.** "ERISA permits suits for breach of fiduciary duty only against ERISA defined fiduciaries." *Arizona State Carpenters Pension Trust Fund v. Citibank (Arizona),* 125 F.3d 715, 719 (9th Cir.1997); see also *Reich v. Lancaster,* 55 F.3d 1034, 1046 (5th Cir.1995). ERISA defines a fiduciary as anyone who exercises discretionary authority or control respecting the management or administration of an employee benefit plan. 29 U.S.C. § 1002(21)(A).

**11.** According to the Plan, "It is further understood that *Liberty is neither the Administrator, a Fiduciary nor a named Fiduciary of the Plan* for purposes of the Employee Income Retirement Security Act of 1974 or any state law of

a similar nature." The Plan, *located in* Plaintiff's Appendix at 125 (emphasis added).

**12.** According to Annex B, "... Liberty will make claims recommendations as agreed by Liberty and [McKesson]," and "All doubtful claims will be referred to [McKesson] for its determination of liability." Annex B, *located in* Plaintiff's Appendix at 144–45.

**13.** In *Hubbard,* the Fifth Circuit stated "that courts are less likely to find preemption when the claim merely affects relations between an ERISA entity and an outside party, rather than between two ERISA entities." 42 F.3d at 947 (citing *Memorial Hospital,* 904 F.2d at 249).

pretation and administration of an ERISA plan." *Id.* In this case, Erlandson's claims—unlike the plaintiff's claims in *Hubbard*—are not inextricably tangled with an improper denial of benefits under the terms of the Plan. As discussed above, her state law claims do not involve matters of federal concern intended to be preempted ERISA.

In sum, the court concludes that Erlandson's claims, as currently alleged in her petition, are not completely preempted by ERISA § 502. Hence, these claims are not federal in nature and do not themselves give rise to federal jurisdiction. Removal in this case was improper.

### D. *Costs and Attorney's Fees for Improper Removal*

Erlandson also asks the court to order Liberty to pay her costs and expenses, including a reasonable attorney's fee incurred as a result of the improper removal, as provided in 28 U.S.C. § 1447(c) ("An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal.") and FED. R. CIV. P. 54(d) (permitting recovery of attorneys' fees and other costs). Motion at I, 12; Plaintiff's Reply to Defendant Liberty's Response to Plaintiff's Emergency Motion to Remand at 1. As grounds for this motion, Erlandson tersely asserts that "Liberty removed this case without asserting any proper basis for removal." Motion at 12.

The court finds that the non-removability of this case is not so obvious as to warrant an award of costs. See *Miranti v. Lee*, 3 F.3d 925, 928 (5th Cir. 1993) (stating that, by amending § 1447(c), Congress did not intend the "routine imposition of attorney's fees against the removing party when the party properly removed"). When removability of the case is plausible, a district court should deny costs and fees. *See* WRIGHT, MILLER &

COOPER, FEDERAL PRACTICE AND PROCEDURE § 3739, at 488 (3d ed.1998); see also *Miranti,* 3 F.3d at 928–29 (refusing to award attorney's fees to the plaintiff where the defendant's removal was reasonable). Here, Liberty has made a colorable argument for removal. Therefore, Erlandson's request for costs and attorney's fees under 28 U.S.C. § 1447(c) and FED. R. CIV. P. 54 is denied.

### III. *CONCLUSION*

As set forth above, Liberty has not presented any issue involving matters Congress intended to be regulated exclusively by ERISA. The court, therefore, lacks subject matter jurisdiction over Erlandson's state law claims. Accordingly, Erlandson's motion to remand is **GRANTED**, and this case is **REMANDED** to the **101st Judicial District Court of Dallas County, Texas**. The clerk shall mail a certified copy of this memorandum order to the county clerk of Dallas County, Texas. 28 U.S.C. § 1447(c). In addition, Erlandson's motion for attorney's fees is **DENIED**.

**SO ORDERED.**