RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 16a0300p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

_____

SAMANTHA MILBY,

                *Plaintiff-Appellant,*

    *v.*

MCMC LLC,

                *Defendant-Appellee.*

No. 16-5483

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 3:15-cv-00814—Charles R. Simpson III, District Judge.

Decided and Filed:  December 22, 2016

Before:  BATCHELDER, STRANCH, and DONALD, Circuit Judges.

_____

**COUNSEL**

_____

**ON BRIEF:**  Michael D. Grabhorn, Andrew M. Grabhorn, GRABHORN LAW OFFICE, PLLC, Louisville, Kentucky, for Appellant.  Matthew W. Breetz, Michael E. Kleinert, STITES & HARISON, PLLC, Louisville, Kentucky, for Appellee.

_____

**OPINION**

_____

JANE B. STRANCH, Circuit Judge.  Samantha Milby was granted monthly long-term disability benefits through a group insurance policy provided by her employer, University of Louisville Hospital.  Her benefits were subsequently terminated after her disability carrier hired defendant MCMC, a third-party medical record reviewer, and MCMC opined that Milby could return to work.  Milby brought this state-law claim against MCMC, which removed the case to

federal court alleging complete preemption under the Employee Retirement Income Security Act of 1974 (ERISA).  Milby appeals the district court's denial of her motion to remand the case and its grant of MCMC's motion to dismiss her case.  Based on this court's decision in *Hogan v. Jacobson*, 823 F.3d 872, 879–83 (6th Cir. 2016), applied to the specific facts in this record, we **affirm**.

## I.  BACKGROUND

Milby worked as a nurse at the University of Louisville Hospital in Kentucky.  Through her employment, Milby was covered by a long-term disability insurance policy.  In April 2011, health conditions made it so Milby could no longer work.  She applied for and received disability benefits through her insurance policy for approximately seventeen months.  As part of a subsequent eligibility review, the plan engaged MCMC, a Massachusetts-based third-party reviewer, to go through Milby's medical documents and provide an opinion on whether the medical evidence supported Milby's work restrictions.  MCMC and its agent opined that Milby was able to work, stating:

> The opinions of [Milby's treating physicians] are not supported by the available medical documentation as there are no objective findings which would support the claimant's inability to stand and move for more than just a few minutes, as well as repetitively bend, squat, kneel, and crouch.  The claimant would have the capacity to perform sustained full time work without restrictions as of 2/22/2013 forward.

(R. 1-1, PageID 13)  Neither MCMC nor its agent Jamie Lewis was licensed to practice medicine in the Commonwealth of Kentucky at the time they rendered the medical opinion on Milby.  Based in part on MCMC's recommendation, the plan terminated Milby's benefits effective February 21, 2013.

Milby filed a lawsuit in state court, separate from this one, against her disability insurance provider.  That case was removed to federal court and remains pending.  *See Milby v. Liberty Life Assurance Co. of Boston*, No. 3:13-cv-487 (W.D. Ky.).

Milby filed this lawsuit in state court alleging a state-law claim of negligence per se against MCMC for practicing medicine in Kentucky without the appropriate licenses.  MCMC

removed the case to federal court based on complete preemption under ERISA. The trial court denied Milby's motion to remand the case to state court and granted MCMC's motion to dismiss under Rule 12(b)(6). Milby timely appealed the final judgment against her.

## II. ANALYSIS

### A. Standard of Review

We review de novo a district court's decision involving legal questions of subject matter jurisdiction. *Hogan v. Jacobson*, 823 F.3d 872, 879 (6th Cir. 2016). Factual determinations regarding jurisdictional matters are reviewed for clear error. *Id*. A district court's ruling on a motion to dismiss a claim is reviewed de novo. *Id*. at 883.

### B. Complete Preemption of State-Law Claims under ERISA

We begin with an overview. ERISA creates a "uniform regulatory regime over employee benefit plans." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004). Congress intended that this federal regime protect beneficiaries of employee benefit plans while providing employers with uniform national standards for plan administration. *Id*. ERISA's regime includes "an integrated system of procedures for enforcement." *Id*. (quoting *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 147 (1985)). Section 1132(a) of ERISA completely preempts "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy" because such actions "conflict[] with the clear congressional intent to make the ERISA remedy exclusive . . . ." *Hogan*, 823 F.3d at 879 (quoting *Davila*, 542 U.S. at 209). But claims that stem from a duty that "is not derived from, or conditioned upon, the terms" of an ERISA plan are not completely preempted. *Gardner v. Heartland Indus. Partners, LP*, 715 F.3d 609, 614 (6th Cir. 2013). This division between preempted and not preempted claims is part of a "carefully integrated" civil enforcement scheme. *Id*. at 613 (quoting *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987)).

Determining the side of the dividing line on which a claim should fall is not always simple. Courts have provided guidance, however, by placing a range of state-law claims in the category of no preemption. *See, e.g.*, *Darcangelo v. Verizon Commc'ns, Inc.*, 292 F.3d 181, 186

(4th Cir. 2002) (tort claims for disseminating private medical information as part of a scheme to get an employee fired); *Erlandson v. Liberty Life Assur. Co. of Boston*, 320 F. Supp. 2d 501, 508 (N.D. Tex. 2004) (claims for assault and invasion of privacy stemming from an investigation ordered by an insurer); *Byars v. Greenway*, No. 14-cv-1181, 2014 WL 7335694, *4 (W.D. Tenn. Dec. 19, 2014) (unpublished opinion) (negligence claims related to notarization process). Other claims have been placed in the category of claims that duplicate ERISA's enforcement mechanism and are completely preempted. *See, e.g.*, *Hogan*, 823 F.3d at 883 (negligence per se for unlicensed practice of medicine); *Davila*, 542 U.S. at 210.

In *Davila*, the Supreme Court articulated a two-prong test to determine whether a claim falls in the category that is completely preempted or in the category not preempted. 542 U.S. at 210. A claim falls in the category of complete preemption under § 1132(a) when a claim satisfies both prongs of the following test:

> (1) the plaintiff complains about the denial of benefits to which he is entitled only because of the terms of an ERISA-regulated employee benefit plan; and (2) the plaintiff does not allege the violation of any legal duty (state or federal) independent of ERISA or the plan terms.

*Gardner*, 715 F.3d at 613 (quoting *Davila*, 542 U.S. at 210). The state-law claims in *Davila* involved insurance plans failing to exercise ordinary care when the plans denied coverage for certain medical procedures. *Davila*, 542 U.S. at 204–05. Those claims involved "pure eligibility decisions" and were preempted by ERISA. *Id.* at 221.

In light of this overview of the governing law, we turn to the *Davila* test and its application to Milby's case.

### 1. Claims Based on the Terms of an ERISA-Regulated Plan

To determine whether a claim satisfies the first prong of the *Davila* test, courts look beyond the "label placed on a state law claim" and instead ask "whether in essence such a claim is for the recovery of an ERISA benefit plan." *Hogan*, 823 F.3d at 880 (quoting *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 469 (6th Cir. 2002)). A claim "likely falls within the scope of § 1132 when the only action complained of is a refusal to provide benefits under an ERISA plan

and the only relationship between the plaintiff and defendant is based on the plan." *Id*. (quoting *Davila*, 542 U.S. at 211).

The plaintiff in *Hogan* brought negligence per se claims against two medical professionals who were employees of the insurance company that administered a plan governed by ERISA. *Id*. at 877. The medical professionals were allegedly negligent because they were not licensed to practice medicine or psychology in the Commonwealth of Kentucky at the time they reviewed the plaintiff's records and rendered opinions that were relied on by the insurance company. *Id*. In *Hogan,* we held that the claim of negligence per se against the plan's medical professionals involved "a relationship created solely by the ERISA plan and an incident that is subsumed entirely within the denial of benefits under an ERISA plan." *Id*. at 881. The claim was completely preempted by ERISA because the negligence it alleged was "the negligent processing and denial of [Hogan's] claim for ERISA benefits." *Id*.

As both parties concede, the claim in this case shares many parallels with the claims in *Hogan*. The alleged negligence of medical professionals in both cases involves the same Kentucky licensing law: Ky. Rev. Stat. § 311.560. *Id*. at 878. As in this case, the medical professional defendants in *Hogan* rendered opinions that were considered by the plan as it decided to deny benefits. *Id*. at 877. There is also a meaningful difference between the facts in the cases—the medical professionals in *Hogan* were straight employees of the plan administrator; the medical professionals here were employed by an independent third party. Claims against an employee of the plan administrator are more likely to be duplicative of ERISA's enforcement mechanism than are claims against third parties, who generally fall outside the ERISA enforcement regime. *See id*. at 884. Because a third-party reviewer is not acting as the plan administrator nor making the benefits determination—and depending upon laws a state may have enacted to govern such separate entity or actions—the type of claim here may edge toward the category of those not preempted.

Despite this relevant factual difference, however, *Hogan* determines the outcome for the first prong of the *Davila* test here. MCMC's "conduct was indisputably part of the process used to assess a participant's claim for a benefit payment under the plan, making the negligence claim an alternative enforcement mechanism to ERISA's civil enforcement provisions." *Id*. at 880

(quoting *Jass v. Prudential Health Care Plan, Inc.*, 88 F.3d 1282, 1489 (7th Cir. 1996)). As in *Hogan*, the damages in this case "arise from the ultimate denial of disability benefits." *Id*. at 881.

Milby argues that the first prong of the *Davila* test is not satisfied because MCMC is not a proper defendant for an ERISA action and therefore Milby could not have brought her claim against MCMC under ERISA. But *Hogan* addressed this issue and determined that the analysis hinges on "whether in essence such a claim is for the recovery of an ERISA plan benefit," and not on who was sued. 823 F.3d at 880. Milby's claim in this case arises from the denial of benefits from an ERISA plan and satisfies the first prong of the *Davila* test for complete preemption.

### 2. Legal Duty Independent of ERISA

The second prong of the *Davila* test instructs us to ask whether the plaintiff alleges the violation of an independent legal duty. 542 U.S. at 210. A state-law tort is independent of ERISA when the duty conferred was "not derived from, or conditioned upon, the terms of" the plan and there is no "need[] to interpret the plan to determine whether that duty exists." *Gardner*, 715 F.3d at 614. In *Gardner*, we held that a claim for tortious interference with a plaintiff's right to receive benefits under an ERISA plan was not preempted when the court could determine liability without having to interpret any plan terms. *Id*. at 615. Similarly, a duty can be created by a contract that is separate from the agreement that created the ERISA-governed plan; such a duty may be breached and liability may be determined independent of the ERISA plan. *Erlandson*, 320 F. Supp. 2d at 509. In *Erlandson*, a breach of contract claim against a third-party service provider was not preempted despite a relationship to an ERISA plan because the claim arose from a separate contract between the plan administrator and the third-party provider. *Id*.

Milby argues that the claim here does not require the interpretation of any terms in the plan agreement so the duty is independent. MCMC argues that the independent duty inquiry should end with the determination that the relationship between it and Milby arose solely from an ERISA plan. But as *Gardner* and *Erlandson* demonstrate, an independent duty may exist even when an ERISA plan is the basis for the relationship between the parties. *See Gardner*,

715 F.3d at 615; *see also Erlandson*, 320 F. Supp. 2d at 509.  Essentially, MCMC would have us ask whether an ERISA plan is the "but-for" cause of a relationship between the parties.  But such a test would capture too many claims that courts have found to be based on independent duties. *See, e.g.*, *Gardner*, 715 F.3d at 615; *Erlandson*, 320 F. Supp. 2d at 508; *Byars*, 2014 WL 7335694 at *4.  The inquiry is instead a case-specific one that requires examination of the complaint and its alleged facts, the state law on which the claims are based, and various plan documents. *Davila*, 542 U.S. at 211.

We turn to Kentucky law to determine whether state law creates an independent duty between the medical reviewers and Milby.  Milby asserts that the medical reviewers owe her an independent duty under Ky. Rev. Stat. § 311.560, which prohibits the practice of medicine without a license.  We recently addressed a similar issue in *Hackney v. Lincoln Nat'l Life Ins. Co.*, No. 15-5563, 2016 WL 6471763 (6th Cir. Nov. 2, 2016) (unpublished opinion), another case involving claims of negligence per se for the unlicensed practice of medicine. In *Hackney*, we determined that reviewing medical records does not by itself constitute the practice of medicine in Kentucky.  *Id*. at *12.  The practice of medicine is defined as "the diagnosis, treatment, or correction of any and all human conditions, ailments, diseases, injuries, or infirmities by any and all means, methods, devices, or instrumentalities."  *Id*. (quoting Ky. Rev. Stat. § 311.550(10)).  The *Hackney* court determined that the nurses who reviewed the medical files in that case "made no determinations regarding the medical necessity of any treatment; they simply determined whether Hackney was capable of performing the necessary functions of his job."  *Id*.  The court found that "[s]uch determinations d[id] not fall within the ambit of § 311.560."  *Id*.  If medical professionals reviewing documents without making determinations regarding medical necessity are not practicing medicine within the meaning of the Kentucky licensing law, it follows that the licensing law does not create a duty that flows from those professionals to claimants.  As such, MCMC—which the complaint does not allege is involved in any determinations regarding medical necessity of treatments—is not practicing medicine and does not have an independent duty to Milby under the Kentucky medical licensing statute invoked in this case.  Instead, the allegations in Milby's complaint implicitly rely on ERISA to establish the duty required for her negligence claim.  The claim here therefore satisfies the second prong of the *Davila* test.

Because both of the prongs of the *Davila* test are met, the state-law negligence claim in this case fits in the category of claims that are completely preempted by ERISA. We affirm the district court's denial of Milby's motion to have the case remanded to state court.

**C. Dismissal under Rule 12(b)(6)**

The district court found that MCMC was not a proper defendant for an ERISA claim and dismissed the complaint. In *Hogan*, we affirmed dismissal of similar claims against nurses employed by a plan administrator in part because "the proper defendant in an ERISA action concerning benefits is the plan administrator." 823 F.3d at 884 (quoting *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 522 (6th Cir. 2010)). The appropriate avenue for Milby's potential relief on these matters is in the pending case against the plan administrator. We therefore affirm the district court's grant of MCMC's motion to dismiss the claim under Rule 12(b)(6).

**III. CONCLUSION**

The state-law claim in this case fits in the category of claims that are completely preempted by ERISA. First, the claim is in essence about the denial of benefits under an ERISA plan. Second, the defendant does not owe an independent duty to the plaintiff because the defendants were not practicing medicine under the specific Kentucky law invoked here as the basis for negligence per se. Denial of the plaintiff's motion to remand and dismissal of the claim were proper. The district court's judgment is therefore **affirmed**.