NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0543n.06

Case Nos. 20-3856/3895

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| SECRETARY OF LABOR, | ) | **FILED** |
| Plaintiff, | ) | Nov 24, 2021 |
|  | ) | DEBORAH S. HUNT, Clerk |
|  | ) |  |
| GEMINI INSURANCE COMPANY, | ) | ON APPEAL FROM THE |
|  | ) | UNITED STATES DISTRICT |
| Intervenor Plaintiff-Appellee/Cross-Appellant, | ) | COURT FOR THE |
|  | ) | SOUTHERN DISTRICT OF |
| v. | ) | OHIO |
|  | ) |  |
| THOMAS E. POTTS, JR.; FIDUCIARY TRUST | ) |  |
| SERVICES, INC., | ) | O P I N I O N |
|  | ) |  |
| Defendants-Appellants/Cross-Appellees. | ) |  |
|  | ) |  |

Before: GUY, COLE, and STRANCH, Circuit Judges.

COLE, J., delivered the opinion of the court in which GUY and STRANCH, JJ., joined. STRANCH, J. (pp. 9–11), delivered a separate concurring opinion.

COLE, Circuit Judge. Thomas Potts, Jr., and his company, Fiduciary Trust Services, Inc. (collectively, "Potts"), appeal the district court's order granting summary judgment to their insurance provider, Gemini Insurance Company. In 2016, the U.S. Secretary of Labor sued Potts and his company over potential violations of the Employee Retirement Income Security Act ("ERISA"). Shortly after, Gemini intervened in the action seeking a judicial determination that it had no duty to defend Potts under the plain terms of their insurance policies. Gemini then moved for judgment on the pleadings, arguing the ERISA claims fell outside of the policies' coverage and

Potts failed to provide it with the notice required to trigger its obligations. The district court denied that motion, but it ultimately granted Gemini summary judgment after concluding the policy explicitly disclaimed coverage of ERISA actions. Potts appealed that order. To offer an alternative ground for us to affirm the judgment in its favor, Gemini then conditionally cross-appealed the denial of its motion for judgment on the pleadings. Because we affirm the district court's summary judgment grant, we dismiss Gemini's cross-appeal as moot.

I.

A.    FACTUAL BACKGROUND

Fiduciary Trust Services, Inc., provides independent, third-party trustee services to employee stock ownership programs. It is owned and operated by its president, Thomas Potts. In 2010, Triple T Transport retained Potts to serve as a limited purpose trustee for its employee stock ownership plan. In this capacity, Potts executed a Stock Purchase Agreement on Triple T Transport's behalf in early 2011. When executing the agreement, however, Potts relied on a flawed stock valuation opinion. This resulted in the stock being significantly overvalued, which ultimately caused a substantial financial loss to Triple T Transport's employee stock ownership plan.

The Secretary of Labor first contacted Potts about the transaction in 2012. After years of investigation into possible ERISA violations, the Secretary entered into a tolling agreement with Potts in February 2015. The agreement set out specific dates after which the Secretary could bring suit, and in exchange, Potts agreed to "waive any defense based on [any] limitations periods . . . that would otherwise be available to [Potts] concerning the timeliness of any legal proceedings with respect to the Claims that may be brought against [him] by the Secretary." (Mot. for Summ. J. (Tolling Agreement), R. 91-11, PageID 1339–40.)

On March 26, 2015, the Secretary sent Potts a Voluntary Compliance Notice Letter informing him that it had "concluded its investigation" of the Triple T Transport matter and determined that Potts "may have violated several provisions of ERISA." (Mot. for Summ. J. (Notice Letter), R. 91-14, PageID 1346.) The letter detailed two suspected ERISA violations at some length, but it did not explicitly threaten litigation. Rather, its stated purpose was "to advise" Potts of its findings and "give [him] an opportunity to comment before the Department [of Labor] determines what, if any, action to take." (*Id.* at PageID 1346.) The letter cautioned, however, that Potts's "failure to correct the violations and restore the losses may result in referral of this matter to the Office of the Solicitor of Labor for possible legal action." (*Id.* at PageID 1351.) Potts chose not to take corrective action, instead asserting that "the transaction fully complied with ERISA at its inception" in a letter to the Secretary. (Mot. for Summ. J. (Wells Letter), R. 91-15, PageID 1354.)

The Secretary notified Potts on December 10, 2015, that it had referred the matter to its Solicitor "for consideration of filing an action in federal court." (Intervenor Compl. Ex. 5, R. 10-6, PageID 121.) Potts notified his professional liability insurance carrier—Gemini Insurance Company—of the impending claim the next day.

Potts had a longstanding relationship with Gemini. He had used Gemini as his company's professional services liability insurance carrier since 2010. Most relevant here, though, were the policies in place from September 1, 2014, to September 1, 2015 ("2014 policy"), and from September 1, 2015, through September 1, 2016 ("2015 policy"). Both policies excluded several claims from their coverage. The 2014 and 2015 "EXCLUSIONS" sections contained the following admonition:

> This Policy does not apply to any **Claim** or **Claim Expenses Arising Out Of** any actual or alleged:
>
>     . . . .
>
>   J)  Violation of or failure to comply with the Employee Retirement Security Act of 1974 (ERISA) or similar provisions of any Federal, State or local statutory law or common law.

(Mot. for Summ. J. (2014 policy), R. 91-23, PageID 1400–01; Mot. for Summ. J. (2015 policy), R. 91-24, PageID 1439–40.)

The policies were also both "claims-made notice" policies, rather than "occurrence" policies. Occurrence policies provide coverage for acts done during the policy period regardless of when the claim is brought. Claims-made notice policies, on the other hand, provide coverage only after the carrier receives notice during a specified period. Under the 2014 and 2015 policies, Gemini was not obligated to pay Potts's claims unless it received "[w]ritten notice" of the claims "during the Policy Period or within sixty (60) days thereafter." (2014 policy, R. 91-23, PageID 1397; 2015 policy, R. 91-24, PageID 1436.) Additionally, under both policies, Potts was not covered for "Wrongful Acts" that occurred "[p]rior to the inception date of th[e] Policy" that he "knew," or "could have reasonably foreseen," "might result in a Claim." (2014 policy, R. 91-23, PageID 1397; 2015 policy, R. 91-24, PageID 1436.)

B.    PROCEDURAL BACKGROUND

On June 27, 2016, the Secretary of Labor filed an ERISA action against Potts, his company, and Triple T Transport. Gemini moved to intervene on September 20, 2016, seeking a judicial declaration that it was not obligated to defend or indemnify Potts under either the 2014 or 2015 professional liability insurance policies. After Gemini was permitted to intervene, it moved for judgment on the pleadings. The district court denied Gemini's motion and bifurcated the case, separating the claims that Gemini brought against Potts from the claims that the Secretary brought

against him. The district court stayed Gemini's action until the Secretary's claims settled in November 2018.

After the stay was lifted, Potts and Gemini filed cross-motions for summary judgment. Gemini argued that the exclusions in the 2014 and 2015 policies were unambiguous and absolved them of any duty to defend Potts. And even if the policy required Gemini to defend Potts, Gemini argued, Potts failed to provide it with the notice required to avail themselves of coverage. Conversely, Potts asserted that the ERISA exclusions were ambiguous and did not exclude coverage of their claim. In their view, reading the exclusion to prohibit all ERISA claims would undermine the nature of the professional services insurance contract between the parties.

The district court ultimately denied Potts's motion and granted summary judgment for Gemini. *See Gemini Ins. Co. v. Potts*, No. 2:16-cv-612, 2020 WL 4000977 (S.D. Ohio July 15, 2020). In its order, the court first determined that the ERISA exclusion in the 2014 and 2015 insurance policies was unambiguous and "broadly applie[d] to any claim or claim expense arising out of ERISA violations." *Id.* at *4. Because "Gemini identified the ERISA statute and specified in clear, exact terms that the policy does not apply to any claim or claim expenses arising out of an ERISA violation," the court concluded that it was bound to "give the plain language of the exclusion effect" and hold that Gemini was not obligated to defend or indemnify Potts in this action. *Id.* Because Potts's claim fell outside the policy's coverage, the district court did not consider whether Potts satisfied the policies' claims-made notice requirements for coverage to apply.

Potts appealed the district court's order. Gemini then conditionally cross-appealed the district court's denial of its motion for judgment on the pleadings, *see Acosta v. Potts*, No. 2:16-cv-612, 2017 WL 4418579, at *7 (S.D. Ohio Oct. 5, 2017), arguing that even if this court

concluded its policies did cover ERISA claims, Potts's failure to abide by the claims-made notice provision defeated coverage. For the following reasons, we affirm the district court's grant of summary judgment and dismiss Gemini's cross-appeal as moot.

## II.

We review a district court's summary judgment grant de novo. *St. Mary's Foundry, Inc. v. Emps. Ins. of Wausau*, 332 F.3d 989, 991 (6th Cir. 2003). Because our jurisdiction is predicated on diversity of citizenship, we apply the choice-of-law rules of the forum state, Ohio. *Great Am. Ins. Co. v. E.L. Bailey & Co., Inc.*, 841 F.3d 439, 443 (6th Cir. 2016). Although "Ohio choice-of-law principles strongly favor" choice-of-law provisions in contracts, *Tele-Save Merch. Co. v. Consumers Distrib. Co., Ltd.*, 814 F.2d 1120, 1122 (6th Cir. 1987), it appears neither of the policies has a choice-of-law provision. But because both parties assume Ohio contract law applies, we apply Ohio law. *Baker Hughes Inc. v. S&S Chem., LLC*, 836 F.3d 554, 560 (6th Cir. 2016).

Under Ohio law, "[a]n insurance policy is a contract whose interpretation is a matter of law." *City of Sharonville v. Am. Emps. Ins. Co.*, 846 N.E.2d 833, 836 (Ohio 2006). "When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties." *Cincinnati Ins. Co. v. CPS Holdings, Inc.*, 875 N.E.2d 31, 34 (Ohio 2007). The "[w]ords and phrases" used, moreover, "must be given their plain and ordinary meaning 'unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument.'" *Laboy v. Grange Indem. Ins. Co.*, 41 N.E.3d 1224, 1227 (Ohio 2015) (quoting *Alexander v. Buckeye Pipe Line Co.*, 374 N.E.2d 146, 148 (Ohio 1978)). But if the terms of the policy are susceptible to more than one interpretation, "they 'will be construed strictly against the insurer and liberally in favor of the insured.'" *Am. Emps. Ins. Co.*, 846 N.E.2d at 836 (quoting *King v. Nationwide Ins., Co.*, 519 N.E.2d 1380, 1380 (Ohio 1988)).

This is "particularly true" where, as here, the provisions at issue "purport to limit or qualify coverage under the policy." *Westfield Ins. Co. v. Hunter*, 948 N.E.2d 931, 935 (Ohio 2011).

On appeal, Potts argues that we should look beyond the plain text of the 2014 and 2015 policies to fully appreciate the parties' intent. Specifically, he requests we either read the language of Gemini's annual renewal application to limit the ERISA exclusion's application, find that this particular ERISA claim falls within an amendatory endorsement (which should trump the exclusion), or determine that excluding all ERISA claims would conflict with the policies' definition of "professional services." In any event, Potts argues that because the policy is open to more than one interpretation, he is entitled to a liberal construction of the policy in his favor.

These arguments, however, are unavailing under Ohio law because they ignore the plain language of the 2014 and 2015 policies. Both policies plainly state that they "do[] not apply to any Claim or Claim Expenses Arising Out Of any actual or alleged[] . . . . Violation[s] of or failure to comply with [ERISA] or similar provisions of any Federal, State, or local statutory law or common law." (2014 policy, R. 91-23, PageID 1400–01; 2015 policy, R. 91-24, PageID 1439–40.) As the district court properly concluded, those policy exclusions concretely identified the ERISA statute and "specified in clear, exact terms that the policy does not apply to *any* claim or claim expenses arising out of an ERISA violation." *Gemini Ins. Co.*, 2020 WL 4000977, at *4 (emphasis added). Under Ohio law and on these facts, neither the renewal applications nor the amendatory endorsements alter this policy's broad prohibition on ERISA claims.

Take, for example, Potts's argument on the renewal applications. In his view, the renewal applications are part of the insurance policy and "make abundantly clear" that the parties' intent was to provide insurance for his actions as an employee stock ownership program fiduciary. Yet the text of the policies' exclusion applies to *all* ERISA violations by its plain terms, as the district

court observed. *Id.* It does not except Pott's actions as an employee stock ownership program fiduciary.

Potts's argument on the impact of the amendatory endorsement on the ERISA exclusion fails for similar reasons. Amendatory Endorsement No. 2 defines "professional services" as "the performance of providing services as a trustee for Employee Stock Ownership Plans for others for a fee." (Intervenor Compl., R. 19-1, PageID 208.) Potts argues he provided Triple T Transport "professional services" by serving as its trustee for a fee and he is therefore entitled to coverage under the policy. As Gemini argues and the district court stressed, however, there are professional services claims that could exist outside of the policies' ERISA exclusion. *See Gemini Ins. Co.*, 2020 WL 4000977, at *5. For example, Potts—acting as a trustee—could advise employment stock ownership plans on corporate governance issues or executive compensation, which could give way to negligent representation claims. *Id.*; *see also Flanagan Lieberman Hoffman & Swaim v. Transamerica Life & Annuity Co.*, 228 F. Supp. 2d 830, 849 (S.D. Ohio 2002). Under those circumstances, claims against Potts would be covered by Gemini's insurance policy. But here, the policies unambiguously state that they do not apply to *any* ERISA claims. Consequently, the district court correctly held that Gemini had no duty to defend Potts against the Secretary's ERISA claims. *Gemini Ins. Co.*, 2020 WL 4000977, at *5; *see also Cincinnati Indem. Co. v. Martin*, 710 N.E.2d 677, 678 (Ohio 1999) ("[I]f it is established that the claim falls within an exclusion to coverage, the insurer is under no obligation to defend the insured").

## III.

The district court properly granted Gemini summary judgment. Accordingly, we affirm the district court's judgment and dismiss Gemini's conditional cross-appeal as moot.

JANE B. STRANCH, Circuit Judge, concurring. Although I join the majority opinion to affirm, I write separately to address my concerns about the limited policy underlying this case as it relates to the expansive nature of ERISA's fiduciary duties and the statute's broad applicability.

This case is a dispute over what those in the ERISA world would call fiduciary insurance. The record tells us what the parties agreed to be Potts's work during the policy period. The Professional Liability Insurance policy with Gemini specified that Potts purchased coverage for his work "providing services as a trustee for Employee Stock Ownership Plans for others for a fee."

For those who have waded into ERISA's deep waters, this policy language immediately signals that Potts's work falls squarely within the realm of that statute. ERISA's underlying purpose is clear: "establish a 'uniform regulatory regime' for plan administration that protects monies belonging to plan beneficiaries" being held and managed by others. *Wilson v. Safelite Grp., Inc.*, 930 F.3d 429, 434 (6th Cir. 2019) (quoting *Milby v. MCMC LLC*, 844 F.3d 605, 609 (6th Cir. 2016)). At bottom, ERISA is all about fiduciary responsibilities. It "establish[es] standards of conduct, responsibility, and obligation" for those managing employee benefit plans and "provid[es] for appropriate remedies, sanctions, and ready access to the Federal courts" when those standards are not met. 29 U.S.C. § 1001(b). ERISA plan administrators—such as those acting as ESOP trustees—have the highest fiduciary duties known to the law, *Gregg v. Transp. Workers of Am. Int'l*, 343 F.3d 833, 841 (6th Cir. 2003), much of which Congress drew from the common law of trusts, *Varity Corp. v. Howe*, 516 U.S. 489, 496 (1996).

To put it mildly, a professional liability policy for one "providing services as a trustee for Employee Stock Ownership Plans" that excludes all ERISA claims offers little. ERISA's "uniform regulatory regime over employee benefit plans" virtually occupies the field. *Aetna*

*Health Inc. v. Davila*, 542 U.S. 200, 208 (2004). Section 1132(a) of ERISA completely preempts "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy" because such actions "conflict[] with the clear congressional intent to make the ERISA remedy exclusive." *Hogan v. Jacobson*, 823 F.3d 872, 879 (6th Cir. 2016) (quoting *Aetna Health, Inc.*, 542 U.S. at 209). Following years of near complete ERISA preemption, the courts acknowledged that some claims that peripherally involve an ERISA plan may fall outside the coverage of the statute. We have described claims that are not completely preempted as those that stem from a duty that "is not derived from, or conditioned upon, the terms of" an ERISA plan. *Gardner v. Heartland Indus. Partners, LP*, 715 F.3d 609, 614 (6th Cir. 2013). One would think that this narrow exception would not apply to an individual like Potts whose work is providing services as a trustee for ESOPs. The few hypothetical scenarios that Gemini provides as examples of how the ERISA exclusion does not wipe away *all* coverage for a policy intended to cover Potts's work demonstrate just how little coverage the professional liability policy offers.

Indeed, this policy and its exclusion are close to the line of an illusory policy. Courts will not enforce illusory insurance provisions or policies, which are those that appear to provide the insured benefits but do not actually do so. *See Irondale Indus. Contractors, Inc. v. Va. Sur. Co.*, 754 F. Supp. 2d 927, 933 (N.D. Ohio 2010); *see also* Ian Weiss, Comment, *The Illusory Coverage Doctrine: A Critical Review*, 166 U. Penn. L. Rev. 1545 (2018). Given Potts's business and the knowledge that the insurer had of that work, it seems very unlikely that Potts would have knowingly agreed to pay so much for so little coverage of the very work he would want and need insurance to cover.

Ohio law, however, governs. Like many states, Ohio recognizes the unequal bargaining powers of the insured and insurer in some areas. For example, Ohio law requires that where policy

language is ambiguous, courts must construe that language "strictly against the insurer and liberally in favor of the insured." *Smith v. Erie Ins.*, 69 N.E.3d 711, 713 (Ohio 2016). I join the majority, however, because Ohio law also requires that we apply—and prohibits the construction of—clear and unambiguous language, like that found in Potts's policy with Gemini. *See Suder-Benore Co., Ltd. v. Motorists Mut. Ins. Co.*, 995 N.E.2d 1279, 1283 (Ohio Ct. App. 2013). Ohio law has also embraced a very narrow version of the illusory policy doctrine. "When there is some benefit to the insured from the face of the endorsement, it is not an illusory contract." *Ward v. United Foundries, Inc.*, 951 N.E.2d 770, 774 (Ohio 2011). Indeed, an illusory policy exists only when an "exclusion 'eliminates *all* coverage under a policy.'" *Rogers v. Sure Conveyors, Inc.*, 510 F. Supp. 3d 515, 521 (N.D. Ohio 2021) (emphasis added) (quoting *Cincinnati Specialty Underwriters Ins. Co. v. Larschied*, No. 1-14-01, 2014 WL 4672392, at *8 (Ohio Ct. App. Sep. 22, 2014)). Perhaps that view of what is illusory suggests an intention to place on the purchaser the responsibility of close review of every policy provision, which makes this case a cautionary tale for the purchase of fiduciary policies.